The court will proceed to the fourth case, Ruark v. Union Pacific Railroad Company. Mr. Ferguson. Yes, Your Honor. May it please the court, my name is James Ferguson. I'm here representing Mr. Danny Ruark for his claims against Union Pacific Railroad Company. This case is a Federal Employers Liability Act case, which is the negligence statute that covers railroad employees. And it dates back to an injury that occurred on September 22, 2013, in which Mr. Ruark was a maintenance away employee for the Union Pacific, meaning that he did track maintenance and building track. On that date, he was assisting other employees in installing bridge panels, ballast bridge panels, which was an act that required him and the other employees to use a rail drill. The operation of that drill is that you clamp it to the rail, you use a lever to engage the drill, it drills a hole through the rail, you disengage the lever, it pulls back out, you move it down, move it to the next drill spot. It's the normal, everyday use of that drill. There's been no evidence that he did anything incorrectly about how he was using the drill. In fact, the evidence, the only evidence that was supplied at trial, was that he operated it exactly how it was intended to be operated. He reached down, he pulled the lever, and the rail drill, in his words, went boom and blew up in his face. How do we know that he didn't accidentally drill through one of the hydraulic lines on the drill, or negligently attach the hoses? Yes, Your Honor. And if he can't, yeah. Yes, ma'am. I don't believe that it matters at this point in this juncture. This case was dismissed as a directive verdict after the evidence came in on the plaintiff's side. The only evidence that came into court was that he operated it as intended, without negligence. Therefore, we can't infer that he did do anything negligent. Had the defense put on a case and they brought in evidence that he was negligent in the operation, that he did something incorrect, then I believe that you're right, that then that could be a reason to overturn or to lose the trial or to dismiss the case on other grounds. Mr. Ferguson, one of the points that seemed to be emphasized by the district judge is that Mr. Roark was in control of the drill and that his being in control of the drill mattered legally, as the res ipsa doctrine has been applied under the FILA statute. Yes, Your Honor. Even if different applications would apply under the common law of torts. Yes, Your Honor. What's your reaction to the district court's reasoning? I think the district court erred there. I believe that the Robinson case, which is the controlling case law in the Seventh Circuit, makes it clear that the use or participation in the event by the injured party does not preclude the res ipsa doctrine. In fact, the Robinson court states that without evidence of negligence on the part of the person using the item, if it operates or does not operate correctly and something occurs that's not supposed to occur, that's the classic case of res ipsa. So I believe that the trial court got that issue incorrect and you're right, that is the main point is that this decision hinged on the control issue under res ipsa. The trial court disagreed with our case law in the Dubin case out of the Fifth Circuit and also with the Robinson case and said that our client had too much control of this object. However, that stems to be a factual dispute under res ipsa is how much control is too much control. So therefore, the court interpleaded itself as the fact finder when that right, especially under the FILA, is reserved for a jury. The United States Supreme Court makes it quite clear that the FILA is a remedial statute and that Congress intended for it to be a jury question in almost every instance. And it is a rare, rare, extremely rare instance that it should not be, especially under the doctrine of res ipsa. You know, if it were true that every railroad's non-delegable duty of care under FILA meant that a railroad has exclusive control, then wouldn't every FILA case include a racist, soloquitur instruction? Your Honor, I don't believe so. I remember that section in Union Pacific's brief as well. Yeah. That portion of it, the res ipsa doctrine and the control doctrine, classic FILA cases is you're walking, you know, down the side of the ballast and your foot slips out from under you and you fall. I don't think you can say that the control is automatically going to be placed on the railroad there. There's an issue of did you slip, did you look down, did you put your foot where you're not supposed to be. I don't believe that just because, and I don't believe there's any argument that the railroad has a non-delegable duty to provide its workers with safe equipment. But I don't believe that that means that every case is res ipsa. Res ipsa is reserved for those cases where it can't be explained in other ways. Which runs into our secondary portion on appeal, is that the judge didn't allow us to reopen Discovery after new counsel came in, Discovery had closed. Specifically, the reason we wanted to was we wanted to hire an expert to review the drill, look at the mechanicals of it, and find out what went wrong with it. And he pointed that out. But didn't you waive the Discovery issue by failing to file a motion to reopen? Not you, but Roark. Well, Your Honor, I don't believe so. We made the motion for continuance and made the motion to the judge to reopen. He declined that motion at the pretrial conference. He stated, you can make another one at some time later if you wish to. But I don't believe you waive it if he's already made the statement that you're not going to get it. At this point, we had been set for a trial. All evidence had been put in that was going to be able to come in. We had told him, Your Honor, we would like some additional time for this issue, and he declined it. He declined it, but did he not invite you to revisit that if the need became more acute in particular as the case progressed? And I think one of the points that he made, if I remember correctly, is that they just never came back on this. And that's perhaps why Judge Rovner is suggesting there's a waiver here. Well, Your Honor, nothing changed in the file. Nothing changed in what had occurred. We made the motion based on what was already in the record and what we had been able to ascertain from the previous counsel. I didn't believe that anything would have made a difference at that point three months later if we made the motion again. In fact, I would have thought it would have wasted judicial economy even more than having it brought up at the initial point. Your Honors, do you have any more questions? I'm going to reserve time if nothing else. Thank you, Mr. Curtis. Thank you. Ms. Dawson. Thank you, Your Honors, and may it please the Court. I'd like to start by going directly to what Judge Rovner, you said, is how do we know that he didn't drill through the rail, that he didn't drill through a hydraulic hose? And that's exactly why res ipsa is not applicable here. Mr. Ruark had complete control of that drill. He started working at 6 a.m. that morning, and the drill operated appropriately from 6 a.m. up until 8 p.m. that night when something occurred that caused hydraulic fluid to come out. Mr. Ruark was the one who was in control of that drill, and that is why res ipsa is not appropriate here. The cases that plaintiff relies upon do not support his position, and I think a critical distinction in the Supreme Court case of Jasnewski, I apologize if I butchered that, but the critical distinction there is that in that case there were two separate theories of liability. The plaintiff was proceeding under a theory that a defective frog had caused the derailment. The defendant was proceeding under a theory that perhaps the plaintiff's throwing of a switch separate from the frog caused the derailment. What the Supreme Court said there was once the plaintiff has shown that his conduct in throwing the switch did not cause the derailment, then based off of that evidence, because the frog was in exclusive control of the defendant, then it would be appropriate to invoke res ipsa and allow a jury to infer negligence under res ipsa, because the frog was in exclusive control of the defendant. They did not say that you could use res ipsa to infer negligence as it related to the operation of the switch, because the plaintiff was the one operating that switch. And so Jasnewski does not support plaintiff's arguments here, because just as the switch in Jasnewski was operated by the plaintiff, it was only the frog and the tracks that were under the exclusive control of the defendant that res ipsa was allowed to be used to infer negligence. Similarly, in the Fifth Circuit case of Dugas, which plaintiff also relies upon, in that case there was distinct evidence that showed that the portion of the door that would have caused it to fall off was in the exclusive control of the defendant. So expert testimony was introduced that said what would cause this door to fall off would be some sort of malfunction with the running or vibrations could have caused it to come loose. And what the Fifth Circuit said was it's nonsensical to argue that simply by trying to operate the door that he would then exerted control over the mechanisms that would have caused the malfunction. So those cases are readily distinguishable from what we have here, which is an employee who is operating a rail drill for eight hours, operating it without any problems, and then something happens at some point in time. And we don't know what happened, but what plaintiff is asking this court to do is putting that burden on Union Pacific, even though he was the one in control of the mechanism. And permitting that kind of inference is permitting plaintiff to use this as a strict liability statute and to allow every single FELA case to get to a jury and allow them to simply speculate on the cause. It seems that plaintiff's counsel indeed recognizes that some sort of evidence of negligence was required before this could get to a jury as he conceded they wanted to have an expert in order to look at the drill to say what happened. Here at the trial court level, the district court correctly entered Judgment Union Pacific's favor at the close of plaintiff's case because plaintiff's counsel conceded that there was no direct evidence of negligence and also conceded that Mr. Roark was the one who was in control of that drill. Also, while the FELA is a broad statute that does allow for remedial action, it does not allow a plaintiff to simply come into a courtroom, as the district court pointed out, and say, this happened, therefore I should get to a jury. Under the FELA, you have to prove negligence, and under that you have to prove foreseeability as well. Even if plaintiff had tried to proceed on a negligence theory, he would have had to have shown that this was foreseeable to Union Pacific, and there's no evidence in this case that would have allowed a jury to infer that when the drill operated appropriately all day. So as it relates to the res ipsa issue, Mr. Roark was in control of that drill for the entirety of the day. Mr. Roark was the one who would know if something went wrong with it, and to say that Union Pacific can be responsible under res ipsa, to shift that burden to them to explain what happened when Mr. Roark was the one operating it, and there's a multitude of things that could have caused the hydraulic fluid to spill out, is inconsistent with the law, and would make the FELA a strict liability statute. As to the second issue, which is the discovery issue, the case had proceeded for over two years. The district court did not abuse its discretion in refusing to reopen discovery. I believe, though, that the record shows that this issue has been waived. The trial court clearly stated on the record, this issue is not necessarily even right for my consideration. A trial date has not yet been set. What the district court said was, I'm going to go back to my clerk. I'm going to have them set out a trial date. When the trial date is set, that will be the trigger for the movement to continue the trial in order to reopen discovery, and at that time you can lay out what discovery specifically it is you believe you need. That was never done in this case, and for that reason the issue was waived. Nevertheless, even if the issue was not waived, this was not an abuse of discretion. There was nothing abusive about not permitting discovery to be reopened. If plaintiff's argument were to carry weight, any time a plaintiff was unhappy with the way his case had been handled or if discovery had not gone his way, he could simply fire his current counsel, have new counsel come in, and that would give him the do-over that he wanted, and that is certainly not an efficient use of judicial resources, nor is that a fair and just way to litigate the matter. For all those reasons, Your Honors, the Union Pacific asks that judgment be affirmed, and thanks for your consideration. Thank you, Mr. Austin. Mr. Ferguson. Your Honors, on the issue of control and whether these cases are distinguishable, just nowski, however you say that word, dubious, as well as Robinson, the ordinary use of a product or an item is not sufficient to establish the controlling of the rest of it. So the control of this rail drill, it stands with Union Pacific. It is the one that houses it. It is the one that is responsible for making sure it is operating properly, it's been maintained properly, and that it's not a danger to its employees. There is no evidence at all in the record that anything other than perfectly normal, non-negligent use of this drill was occurring. Their own testimony establishes that. It had been used by Mr. Ruark for 8 to 10 hours that day with no problems, meaning he wasn't messing it up. There's no evidence that he had done something wrong. There's no evidence that he clipped the hoses incorrectly. There's no evidence that he drilled through a hose. In fact, this lines up with reciprocity perfectly, because that's something that should not occur on its face, in essence, blowing up a rail drill did, without any evidence available that something went wrong that Mr. Ruark should have realized. Your Honors, unless you have additional questions, I don't. Thank you very much. Thank you, Mr. Ferguson. Thank you, Mr. Dawson. The case is taken under advisement.